BULLOCK, et al. *v.* STATE

No. 42064        February 5, 1962        137 So. 2d 169

*Maurice L. Malone, W. T. Bailey,* Lucedale, for appellants.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

KYLE, J.

The appellants T. J. Bullock, Jr., and Thomas J. Bullock, III, were indicted, tried and convicted in the Circuit Court of George County of the crime of burglary and grand larceny, and each of them was sentenced to imprisonment in the state penitentiary for a term of five years on the charge of burglary, and three years

on the charge of grand larceny. From that judgment they prosecute this appeal.

Three points are assigned and argued by the appellants' attorneys as grounds for reversal of the judgment of the lower court: (1) That the court erred in overruling the defendants' request for a directed verdict at the conclusion of the State's evidence; (2) that the court erred in granting the State's instructions numbered 3, 4, and 5; and (3) that the court erred in overruling the defendant's motion for a new trial.

The appellants, father and son, were charged in the indictment with burglariously breaking and entering a fishing and hunting lodge, the property of L. M. and Lillie Mae Lacy, and the larceny therefrom of several items of bedding and other household goods.

L. M. Lacy testified that he and his wife lived in the City of Gulfport; that during the late summer of 1960 he and his wife acquired title to a small parcel of land situated in a newly developed subdivision in George County known as the ''Riverland Estates''; that he cleared off one of his lots and moved a small building from Gulfport on to the lot to be used as a hunting lodge, and about three weeks before the opening of the deer season in November 1960, he moved bedding and cooking utensils into the building for use by him and his friends during the hunting season. Lacy stated that he went to the camp with several friends a few days later, and when he unlocked the front door of his lodge, he found all of his bedding and cooking utensils were gone. He found that a back window had been removed from the building; and the bedding and other equipment had been taken out through the opening. The property taken away included three mattresses, two bedspreads, and several sheets, and also cooking utensils and a hot plate. Lacy described in detail the several items listed in the indictment and gave the estimated value of each. He stated that the next time he saw the mattresses and

other articles of stolen property they were stored in the jailhouse, in the Town of Lucedale. The witness then identified the several articles of stolen property which were introduced in evidence.

Sheriff W. D. Bearry testified that the burglary was reported to him by Mr. Lacy; that the stolen property had been turned over to him by Mrs. Una Vay Dement, who lived about a mile and a half or two miles north of Highway No. 98; that he understood that Mrs. Dement had been the wife of the defendant T. J. Bullock, Jr., at one time, and that she was the mother of the codefendant, Thomas J. Bullock, III. The sheriff stated that the first time he had ever seen the bedding, sheets and pillow cases was at the home of Mrs. Dement; that he had gone to Mrs. Dement's house to advise her about the release of her daughter down in Pascagoula, and Mrs. Dement told him about the goods being there in her house and turned them over to him voluntarily.

Mrs. Una Vay Dement testified that T. J. Bullock, Jr., was at one time her husband, and that Thomas Jerome Bullock, III, was her son. She stated that she was living down in the Frog Pond House in November 1960; that her son, Thomas Jerome Bullock, III, and his wife were living there with her, and T. J. was staying there with the son. The witness stated that the bedding and other articles of stolen property, which had been introduced in evidence, had been brought to her house by her ex-husband and her son in a Ford butt-headed truck which belonged to Joe Ward, but was being used by her oldest son, W. J. Bullock. She stated that the defendants brought the things to her house sometime between 10 o'clock P. M. and daylight; that she was sick and confined to her bed at that time; that when she got able to get out of bed, she tried ''to call the law'', and when Mr. Bearry and Mr. Maples came to her house to tell her to go to Pascagoula jail and get her daughter, she turned the property over to them.

She stated that the property stayed in her house until November 28, the day that Dorothy was released from the jail at Pascagoula; and that she voluntarily turned the "stuff" over to the sheriff's office. She stated that she had objected to the defendants bringing the "stuff" to her house, and that she ran them off with it, but they brought it back — "T. J. brought it back." The witness was asked whether her former husband T. J. had threatened to make a charge against her since the matter had been pending. She stated that he had not, but he had told her several times that they could get her for being an accessory.

W. J. Bullock testified that he was 24 years old; that the defendants were his daddy and his brother; that he was working for J. B. Wilbourn during the fall of 1960, hauling paper wood and logs; that he was living at Wiggins at that time, but spent a few nights down at his mother's home when she was sick. He stated that he was using an old yellow Ford truck which he loaned to T. J. and Thomas Jerome, III, on the first or second day of November, and when he came back to his mother's house about nine or ten o'clock the next morning, he observed a couple of mattresses and other stuff lying there in the house. The witness stated that he had nothing to do with the taking of the property from Mr. Lacy's camp.

At this point the State rested.

T. J. Bullock testified that he lived over on the west side of the river with his sister; that he had helped put down a well at Mr. Lacy's camp, but he knew nothing about the property that was alleged to have been stolen, that he had never handled it in any way. On cross-examination he was asked if he had ever been convicted. He admitted he had been convicted of grand larceny three times and had been in the penitentiary three times. T. J. Bullock, III, testified that he knew nothing about any of the property that had been stolen; that he did not

steal the property; and that the first time he ever saw the property was in the jailhouse. On cross-examination the witness stated that he was 21 years old; that he had been convicted once of grand larceny and was sentenced to the penitentiary. He said his mother's statement that he and his daddy brought the stolen property to her house was not true.

The only argument made by the appellant's attorneys in support of their first assignment of error is that Mrs. Dement, the principal state witness, had the stolen property in her house for approximately 30 days and did not report it as stolen until the Sheriff of George County appeared at her resident to inform her about the release of her daughter from the jail in Pascagoula. But Mrs. Dement testified that she was sick in bed at the time the property was brought to her house, and that her efforts to report the matter to the sheriff were limited on that account; ▉▉ ▉ and we think that her testimony, along with the other testimony in the record, was sufficient to present an issue of fact for the jury to decide, and there was no error in the court's refusal to grant the appellants' request for a directed verdict.

We have examined the three instructions referred to in the appellants' assignment of errors, and we find no reversible error in any of the instructions. The judgment of the lower court is therefore affirmed.

Affirmed.

*Lee, P. J.,* and *Gillespie, McElroy* and *Jones, JJ.,* concur.